# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ROLLSTOCK, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:21-cv-00395-RK |
| SUPPLYONE, INC., | ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is the motion for summary judgment filed by Plaintiff Rollstock, Inc. ("Rollstock") seeking summary judgment on (1) Count I (breach of contract) of its first amended complaint, and (2) Counterclaim I (breach of contract) filed by Defendant SupplyOne, Inc. ("SupplyOne"). (Doc. 57.) Additionally, Rollstock argues (1) it is entitled to summary judgment on SupplyOne's Counterclaim II (fraud), and (2) that Supply One's Counterclaim III (unjust enrichment) is barred by the existence of a contract between the parties. (Doc. 58.) The motion is fully briefed. (Docs. 58, 61, 66, 67, 69, 70.) For the reasons below, Rollstock's motion for summary judgment (Doc. 57) is **GRANTED** as to SupplyOne's Counterclaim II (fraudulent omission) and Counterclaim III (unjust enrichment) and **DENIED** in all other respects.

## Background

This case arises from a contract between Rollstock, Inc. and SupplyOne, Inc. Rollstock manufactures and sells packaging systems. SupplyOne supplies packaging systems to its customers. Under the contract between Rollstock and SupplyOne, SupplyOne purchased an RC-300 Rotary Chamber machine ("machine") from Rollstock. The machine was for its customer ALL Holding Company, LLC's ("ALL") pork plant facility. ALL, who is not a party, was going to use the machine to vacuum pack pork in bags sold by SupplyOne.

The parties disagree as to (1) which documents embody the terms of the contract, (2) whether Rollstock misrepresented that the machine was new when SupplyOne claims it was in fact used and ten years old, and (3) whether either party breached the contract—Rollstock by supplying a defective machine it could not repair, or SupplyOne by not making payments owed under the contract.

**PROPOSAL 1: January 28, 2019**

In early 2019, SupplyOne contacted Rollstock and indicated that one of its customers, ALL, was interested in acquiring the machine, to be used in a conveyor and packaging system in ALL's "fresh cut room" in its pork plant in Pennsylvania.[1,2] (Doc. 58 at ¶¶ 7-8.) Rollstock submitted a proposal ("Proposal 1") dated January 28, 2019, to SupplyOne for the machine that SupplyOne was contemplating purchasing for ALL as part of a secondary independent agreement with ALL. (*Id.* at ¶ 12; Doc. 58-1 at 155-158.) Proposal 1 provided that Rollstock would be paid $458,098 for the machine and related equipment according to the following terms (the "Payment Terms"): 50 percent of the machine price as a "Deposit with contract,"[3] 40 percent of the machine price "5x days prior to shipment," and the remaining 10 percent of the machine price "30x days after shipment." (Doc. 58 at ¶ 13.) Proposal 1 included a limited one-year warranty (the "Warranty"), as follows:

> ROLLSTOCK LIMITED WARRANTY
>
> ROLLSTOCK INC makes the following LIMITED WARRANTIES. These LIMITED WARRANTIES extend to the original purchaser of this ROLLSTOCK INC product and to no other purchaser or transferee.
>
> ROLLSTOCK INC warrants your ROLLSTOCK INC product against defects in materials or workmanship for a period of one (1) year from the date of installation or one (1) million cycles – a cycle being one (1) complete rotation of all six (6) chambers, or whichever comes first.
>
> Warranty may be voided by use of unauthorized and/or modified parts, or the use of non[] ROLLSTOCK INC certified technicians.
>
> THIS WARRANTY IS EXCLUSIVE. ROLLSTOCK INC MAKES NO OTHER WRITTEN OR VERBAL WARRANTIES OF ANY KIND WHATSOEVER. ALL OTHER WARRANTIES, EXPRESS OR IMPLIED INCLUDING, BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY AND/OR

---

[1] Except where otherwise noted, these facts are taken from the parties' statements of uncontroverted material facts. The Court has omitted facts properly controverted, facts asserted that are immaterial to the resolution of the pending motion, facts asserted that are not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.

[2] Under SupplyOne's arrangement with ALL, SupplyOne would pay to Rollstock the up-front (full) cost of the machine in exchange for an exclusive purchasing agreement with ALL under which ALL would ultimately reimburse SupplyOne the full cost of the machine. (Doc. 58 at ¶ 10.)

[3] The Court notes different wording appears in what is represented as the January 28 proposal as attached to SupplyOne's Counterclaim (Doc. 17-1 at 2 ("50% - Deposit with order")), compared with what the parties represent is the January 28 proposal on summary judgment (Doc. 58-1 at 157 ("50% - Deposit with contract")).

FITNESS FOR A PARTICULAR PURPOSE ARE HER[E]BY DISCLAIMED AND EXCLUDED FROM THIS AGREEMENT BY ROLLSTOCK INC.

(*Id.* at ¶ 14.) The Warranty also included an exclusive remedy provision (the "Exclusive Remedy"), stating as follows:

> Exclusive Remedy. Upon verification of any defect in materials or workmanship, ROLLSTOCK INC will repair your ROLLSTOCK INC product and/or replace any nonconforming or defective parts and materials without charge. In the event that your ROLLSTOCK INC product cannot be repaired, ROLLSTOCK INC will refund an equitable portion of your purchase price upon return of your ROLLSTOCK INC product. THESE REMEDIES SHALL BE YOUR SOLE AND EXCLUSIVE REMEDIES AGAINST ROLLSTOCK INC. YOUR REMEDIES SHALL NOT INCLUDE, AND ROLLSTOCK INC SHALL NOT BE LIABLE FOR, ANY CONSEQUENTIAL DAMAGES OR ANY SPECIAL INCIDENTAL DAMAGES, LOSS OR EXPENSE.

(*Id.* at 15.) Proposal 1 also provided: "This quote is valid for 30x days from the date created[.]" (*Id.* at ¶ 16.)

Approximately two days later, on or about January 30, 2019 (after removing Rollstock's logo from Proposal 1 and replacing it with its own logo), SupplyOne emailed a copy of Proposal 1 to ALL's General Manager that included, without further modification, Rollstock's Payment Terms, Warranty and Exclusive Remedy provisions. (*Id.* at ¶ 18.) SupplyOne did not accept Proposal 1 within 30 days.

**PROPOSAL 2: May 9, 2019**

Approximately three months later, on May 9, 2019, Rollstock submitted an "updated" proposal ("Proposal 2") to SupplyOne. (*Id.* at ¶ 22.) Proposal 2 modified the machine price (reducing it from $458,098 to $430,598 due to changes in what Rollstock was being asked to provide), but otherwise contained the same Payment Terms, Warranty and Exclusive Remedy provisions, and language providing that the "quote is valid for 30x days" as in Proposal 1. (*Id.* at ¶ 23; Doc. 58-1 at 161.) SupplyOne did not accept Proposal 2 within 30 days.

**PROPOSAL 3: October 15, 2019**

Instead, several months later, after further negotiations resulted in additional changes to the machine specifications, Rollstock submitted a third proposal on October 15, 2019 ("Proposal 3") to SupplyOne. (Doc. 58 at ¶ 24.) Although the machine price in Proposal 3 remained the same

3

as Proposal 2 ($430,598), Proposal 3 added a provision that Rollstock would provide a single "scheduled service tech visit after 4 wks of machine install date" and offered a "5% discount on all spare parts for a year." (*Id.* at ¶ 25.) Proposal 3 otherwise contained the same Payment Terms, Warranty and Exclusive Remedy provisions, and "quote is valid for 30x days" provision as in Proposals 1 and 2. (*Id.* at ¶ 26.) SupplyOne did not accept Proposal 3 within 30 days.

**Performance Guarantee Negotiations: January 2020**

In January of 2020, SupplyOne's Food Packaging Specialist Dave Schell[4] communicated with Rollstock's president, Erik Bauer, regarding SupplyOne's purchase of the machine and the terms of the contract. (Doc. 58 at ¶¶ 38-41; Doc. 58-1 at 209, 215-220.) The last email in the thread, from Mr. Schell to Mr. Bauer, sent January 24, 2020, at 8:19 am read:

> When we spoke on the phone, you mentioned a timeframe that the contract would cover (2 years), and the remedy if the machine does not operate to the expectations as laid out (I believe you said Rollstock would want a chance to make it right and if you couldn't you would take the machine back and refund the cost). Neither of these items are mentioned and there are likely other details that should be covered. This is going to need a little more meat in order to present it to [ALL].

(*Id.* at 209.)

**EMAILS: February 21, 2020, February 24, 2020, February 25, 2020**

On February 21, 2020, Mr. Schell emailed Mr. Bauer that "SupplyOne will be purchasing the equipment and you should see a PO [(purchase order)] for that early next week." (Doc. 58-1 at 167.)

The following business day, February 24, 2020, Mr. Schell emailed other SupplyOne personnel to issue the purchase order as soon as possible. (Doc. 58 at ¶ 45; Doc. 58-1 at 98.) The email had Proposal 3 attached. (Doc. 58 at ¶ 46; Doc. 58-1 at 111-113.) The email noted the Payment Terms from Proposal 3, indicated an understanding that SupplyOne would be "paying the sales sheet price minus 10% (10% was our rebate)[,]" and that "[t]here is no warranty noted" and SupplyOne and ALL would be "going out to KC in the next couple of weeks to meet with Rollstock and discuss/agree to a performance guarantee warranty." (Doc. 58-1 at 98.) Mr. Schell

---

[4] Mr. Schell was the SupplyOne employee in charge of negotiating the contracts related to the renovation to ALL's fresh cut room generally and Rollstock's contract in particular. (Doc. 58 at 30.)

4

and Mr. Bauer continued communicating regarding SupplyOne's site visit and testing of the machine at Rollstock. (*Id.* at 192.)

**PURCHASE ORDER: February 27, 2020**

SupplyOne issued a purchase order, dated February 27, 2020, ("Purchase Order") and assigned "P/O Number 169243" to the document. (Doc. 58-1 at 43-45.) The Purchase Order indicated the price for the machine, parts, and start-up and training totaled $387,538.20. (*Id.*) The Purchase Order stated the order was to be purchased from Rollstock, Inc. and would be shipped to ALL in Pennsylvania. (*Id.*) The Purchase Order issued by SupplyOne to Rollstock described the "terms" of the payment due by SupplyOne to Rollstock as "NET 30 DAYS." (Doc. 58 at ¶ 56; Doc. 58-1 at 43-45.) The Purchase Order contained no warranty provision; made no provision or requirement for Rollstock to make any service technician site visits to ALL's facilities; but, provided that Rollstock would provide a maximum of 5 days "start-up and training"; and set forth a "5/14/20" product due date. (*Id.*)

**PROFORMA INVOICE and PAYMENT: March 3, 2020**

Four days later, on March 3, 2020, Rollstock issued a Proforma Invoice ("First Invoice") to SupplyOne. (Doc. 4-1 at 11.) The Proforma Invoice referenced SupplyOne's Purchase Order by "P.O. Number 169243"; set forth "50% Payment due with machine order"; and listed the "TOTAL AMOUNT DUE" pursuant to the Proforma Invoice at $193,769.10. (*Id.*)

On that same day, SupplyOne paid Rollstock $193,769.10 – the amount listed on the Proforma Invoice ("First Invoice"). (Doc. 58 at ¶ 58.) This amount paid by SupplyOne equals 50 percent of the $387,538.20 total price indicated in the Purchase Order. (*Id.* at ¶¶ 56-57.)

**SITE VISIT and MODIFICATION REQUEST: March 13, 2020**

On March 13, 2020, after completing his site visit at Rollstock and viewing the machine, Mr. Schell emailed the site-visit participants including employees from Rollstock, ALL, and SupplyOne. (*Id.* at ¶ 67.) Mr. Schell's email set forth that the machine as viewed was not complete and needed modifications prior to its shipping to ALL. (Doc. 58-1 at 221-226.) The email also set forth the "next steps that were agreed" upon at the site visit. (*Id.*)

5

**SECOND INVOICE: August 7, 2020**

On August 7, 2020, James Paetz, SupplyOne CFO, emailed Terrance Waldenmaier, Rollstock General Manager, requesting a "final contract and revised invoice reflecting new total $387,538.00" for the machine, and "reflecting deposit paid ($193,769.10) and balance due per terms." (Doc. 58-1 at 359-360). The email noted the previous invoice that was paid "was a proforma and does not reflect total, equipment description, etc." (*Id.*).

On August 7, 2020, Rollstock issued Invoice 0011079 (the "Second Invoice") in the amount of $193,768.90.[5] (*Id.* at ¶ 70.) This Second Invoice reflected the payment terms as "Due on Receipt" with a "Ship Date: 08/07/2020."[6] (*Id.*)

Although all three of the Rollstock proposals contemplated SupplyOne submitting 90% of the total purchase price before Rollstock shipped the machine, Rollstock immediately began shipment upon issuance of the Second Invoice. (*Id.* at ¶ 71.) SupplyOne never paid the Second Invoice. (Doc. 58 at ¶ 73.)

**SHIPMENT: August 8, 2020**

On August 8, 2020, Rollstock shipped the machine to non-party CHL for installation at ALL's Pennsylvania facility. (*Id.* at ¶ 71.) The parties dispute when the machine was installed at ALL's facility. (*Id.* at ¶ 72, Doc. 61 at ¶ 72.)

Issues involving the operation of the machine, and disagreement over modifications that were needed, quickly arose among ALL and the parties to this lawsuit. (Docs. 58, 61 at ¶¶ 75-78.)

In January and February 2021, Rollstock issued additional invoices to SupplyOne. (Doc. 58 at ¶¶ 79-80.) These additional invoices remain unpaid.

On June 7, 2021, Rollstock filed this action alleging claims: (1) for breach of contract in Count I, based on SupplyOne's failing to pay the final 50 percent of the purchase price and for unpaid spare parts ordered on an open account; and (2) for account stated[7] in Count II. (Docs. 4,

---

[5] The total price indicated in the Purchase Order was $387,538.20, but the Second Invoice eliminated $.20 from the original total price listed in the Purchase Order.

[6] The Second Invoice reflected as follows: "NET AMOUNT 387,538.00; PAYMENTS/CREDITS 193,769.10; TOTAL AMOUNT DUE 193,768.90."

[7] "Account stated" is defined as: "1. A balance that parties to a transaction or settlement agree on, either expressly or by implication. • The phrase also refers to the agreement itself or to the assent giving rise to the agreement. 2. A plaintiff's claim in a suit for such a balance." ACCOUNT, Black's Law Dictionary (11th ed. 2019).

58 at ¶ 95.) On November 29, 2021, SupplyOne filed a Counterclaim alleging (1) breach of contract as Counterclaim I for breaching warranties of merchantability and fitness for a particular use; (2) fraudulent omission as Counterclaim II for selling a used machine as new; and (3) unjust enrichment as Counterclaim III for providing a used machine that required numerous repairs instead of providing a properly working machine. (Docs. 17, 58 at ¶ 98.)

Rollstock now moves for summary judgment as to Count I (breach of contract) and Counterclaim I (breach of contract). (Doc. 57.) In its suggestions in support, Rollstock also argues SupplyOne's Counterclaim III (unjust enrichment) is barred by the existence of a contract between the parties and that it is entitled to summary judgment on SupplyOne's Counterclaim II (fraud) as it is barred by the economic loss doctrine and is otherwise without merit. (Doc. 58.)

**Legal Standard**

"Summary judgment is required if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. Ins. Co. v. Great Am. Ins. Co.*, 893 F.3d 1098, 1102 (8th Cir. 2018) (citations and quotation marks omitted). A fact is material in this context when it "might affect the outcome of the suit under the governing law," and a genuine dispute is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A moving party is 'entitled to judgment as a matter of law' if the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof." *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (other citation omitted). In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the nonmoving party and giv[es] the nonmoving party the benefit of all reasonable inferences." *Id.* (quotation marks and citation omitted). At the summary judgment stage, the movant must "support" its motion either by "citing to particular parts of materials in the record" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see* Fed. R. Civ. P. 56(c)(1).

In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Rule 56(c); *see also Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's

7

own conclusions, are insufficient to withstand a motion for summary judgment). An "adverse party may not rely merely on allegations or denials, but must set out specific facts – by affidavits or other evidence – showing [a] genuine issue for trial." *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (citing Fed. R. Civ. P. 56(e)). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted).

## Discussion

### I. Claim I and Counterclaim I (breach of contract)

As to Claim I, Rollstock contends the terms of the parties' contract are set forth in Proposal 3 – and were ratified by the parties' partial performance – and that SupplyOne materially breached the contract by failing to make its second payment when due. (Doc. 58 at 28-32.) SupplyOne asserts that genuine disputes of material fact preclude summary judgment on Rollstock's Count I (breach of contract), including evidence that Rollstock did not perform (in that it provided a defective machine that it was not able to render fully operational), that SupplyOne's damages resulting from Rollstock's breach exceed the remaining payment owed under the contract, and that it notified Rollstock of its intent to deduct those damages from the price still due under the contract as required by Missouri's Uniform Commercial Code. (Doc. 61 at 69; Doc. 61 at 42, 64.)

As to Counterclaim I, Rollstock also argues it is entitled to summary judgment. (Doc. 57.) SupplyOne contends it has identified evidence on each element of its Counterclaim I and that Rollstock's efforts to retroactively modify the contract provide no grounds for granting summary judgment in its favor. (Doc. 61 at 64.)

To establish a breach of contract claim under Missouri law, a party must prove four things: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of contract by the defendant; and (4) damages suffered by plaintiff. *Howe v. ALD Servs., Inc.*, 941 S.W.2d 645, 650 (Mo. App. 1997).

Rollstock's position is that the contract is Proposal 3. SupplyOne, in contrast, asserts the operative contract consists of (1) the Purchase Order and (2) the First Invoice. SupplyOne further argues the contract should be supplemented by the warranties and other contractual gap fillers provided for under Missouri's Uniform Commercial Code (UCC) or other law. To be sure, the parties agree there is a contract; however, they disagree as to what documents set forth the terms of the contract.

"'An enforceable contract requires: (1) parties competent to contract; (2) proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation.'" *Id.* (quoting *Sanders v. Ins. Co. of N. Am.*, 42 S.W.3d 1, 15 (Mo. Ct. App. 2001)). Because this matter involves an agreement for a sale of goods between merchants, it is governed under Article 2 of the UCC. RSMo. § 400.2-102. Article 2 of the UCC, § 400.2-204 provides:

> (1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.
>
> (2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.
>
> (3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

To determine the terms of the contract between Rollstock and SupplyOne, the Court applies the UCC, section 400.2-207, RSMo., which "'provides the workable rule of law addressing the problem of the discrepancies in the independently drafted documents exchanged between the two parties.'" *Oakley Fertilizer, Inc. v. Con'l Ins. Co.*, 276 S.W.3d 342, 346 (Mo. Ct. App. 2009) (quoting *Brown Mach., Div. of John Brown, Inc. v. Hercules, Inc.*, 770 S.W.2d 416, 420 (Mo. Ct. App. 1989)). That section provides:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> > (a) the offer expressly limits acceptance to the terms of the offer;
> >
> > (b) they materially alter it; or
> >
> > (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> (3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.

§ 400.2-207, RSMo.

9

"When applying this provision, [the Missouri Court of Appeals] has noted that Section 2-207 is 'one of the most important, subtle and difficult in the entire [UCC]' and that to correctly apply it, 'the facts presented must be reconciled, step-by-step, with various provisions of U.C.C. § 2-207.'" *Oakley Fertilizer, Inc.*, 276 S.W.3d at 347 (quoting *Boese-Hilburn Co. v. Dean Machinery Co.*, 616 S.W.2d 520, 523 (Mo. Ct. App. 1981)). Accordingly, the Court must assess the subject sales agreement under each subsection of § 400.2-207 to determine the existence and terms of the parties' contract.

First the Court determines whether the parties formed a valid contract under section 400.2-207(1). The parties agree they formed a contract for the sale and purchase of the machine but disagree as to what constitutes the offer and what constitutes the acceptance; thus section 400.2-207(2) is applicable.[8]

Because the term "offer" is not defined in the UCC, Missouri courts rely on the common law definition. *Oakley Fertilizer, Inc.*, 276 S.W.3d at 347 (citing U.C.C. § 1-103; *Brown Mach.*, 770 S.W.2d at 419). Under the common law definition, "An offer is made when the offer leads the offeree to reasonably believe that an offer has been made. [E]ven price quotes, if detailed enough, can amount to an offer creating the power of acceptance[.]" *Id.* at 347-48 (cleaned up); *see also, Nordyne, Inc. v. Int'l Controls & Measurements Corp.*, 262 F.3d 843, 846-47 (8th Cir. 2001) (finding that a price quotation was an offer under the UCC where the parties had communicated for several months regarding the contract prior to the furnishment of the price quotation, the quotation was sent only to the buyer, and it "included quantity, price, and time in which to accept, as well as packaging, shipping, and payment terms").

Rollstock's Proposal 3 constituted an offer. It included, among other things, the machine to be purchased, the price ($430,598), the Payment Terms (50 percent of the contract price as a "Deposit with contract," 40 percent of the contract price "5x days prior to shipment," and 10 percent of the contract price "30x days after shipment"), a Warranty, and an Exclusive Remedy

---

[8] Alternatively, the Court finds the parties entered into a contract through their conduct. *See State Line Bag Co., LLC v. CompanionLabs Sys., Inc.*, No. 4:17-CV-00737-DGK, 2018 WL 4008992, at *7 (W.D. Mo. Aug. 22, 2018) ("Where the writings of the parties do not establish a contract, performance by both parties may be sufficient to establish a contract under Mo. Rev. Stat. § 2-207(3)." (citing *White Consol. Indus., Inc. v. McGill Mfg. Co.*, 165 F.3d 1185, 1191-92 (8th Cir. 1999); *PCS Nitrogen Fertilizer, L.P. v. Christy Refractories, L.L.C.*, 225 F.3d 974, 982 (8th Cir. 2000) (holding that the offeree's writing "was not a valid acceptance under UCC § 2–207(1), [but] that the parties nonetheless created a contract under UCC § 2-207(3) through their subsequent conduct[.]")).

provision. Moreover, it included that Rollstock would provide a single "scheduled service tech visit after 4 wks of machine install date," an offer of a "5% discount on all spare parts for a year," and that the quoted price was valid for 30 days. Given the contents, the proposal was sufficient to apprise SupplyOne of Rollstock's offer to contract.

Next, in evaluating acceptance, "[t]he critical question . . . is whether the signals sent by the offeree to the offeror objectively manifest the [ ] intent to be presently bound." *State Line Bag Co., LLC v. CompanionLabs Sys., Inc.*, No. 4:17-CV-00737-DGK, 2018 WL 4008992, at *6 (W.D. Mo. Aug. 22, 2018). *"*The intent to be bound is the parties' objective intent and what a reasonably prudent person would have been led to believe from the actions or words of the parties." *Id.* The Court finds as a matter of law that the email of February 21, 2020, from Mr. Schell to Mr. Bauer, stating, "SupplyOne will be purchasing the equipment and you should see a PO [(purchase order)] for that early next week" constituted a valid acceptance of Rollstock's offer. (Doc. 58-1 at 167.) "A reasonably prudent person would understand th[is] affirmative written confirmation[] as accepting [Rollstock's] offer because [it was] positive and unambiguous." *State Line Bag Co.*, 2018 WL 4008992, at *6. Mr. Schell's February 21 email constitutes acceptance of Rollstock's offer and an intent to be bound by the agreement.

Having found the existence of a contract that was formed when SupplyOne's February 21, 2020 email accepted Rollstock's Proposal 3 offer, the Court concludes there are still questions of material fact precluding summary judgment on the parties' breach of contract claims. The parties' dispute centers on the nature of the warranty of their agreement. While Rollstock argues that (1) SupplyOne is estopped from denying the existence and enforceability of the Warranty because it availed itself of the protections afforded by it and (2) that the Exclusive Remedy bars SupplyOne from seeking relief because it failed to return the machine per the explicit terms of that provision, SupplyOne argues that even if these provisions were part of the parties' agreement, SupplyOne's available remedies are not limited by these provisions because the provisions failed their essential purpose, in that Rollstock was never able to correct the machine's defects.

Whether an exclusive remedy fails its essential purpose is a "fact intensive inquir[y] that should be decided on a full evidentiary record." *Trinity Prod., Inc. v. Burgess Steel, L.L.C.*, 486 F.3d 325, 332 (8th Cir. 2007) (reversing summary judgment in favor of counterclaim defendant where counterclaimant claimed counterclaim defendant's limitation of remedies resulted in the remedy failing its essential purpose and the district court had not considered that claim); *Cargill,*

*Inc. v. Prod. Eng'g Co.*, 627 F. Supp. 1492, 1498 (D. Minn. 1986) ("Whether the circumstances cause the remedy to fail in its essential purpose turns on the particular facts of the case.")

The Court finds questions[9] of material fact remain, including:

- whether the Warranty and the Exclusive Remedy were modified by communications between the parties after Proposal 3 or after SupplyOne's acceptance email (*see, e.g.,* Doc. 58-1 at 98, 209);
- if not, whether the provisions failed their essential purpose such that all remedies provided for in UCC Article 2 are available to SupplyOne;
- depending on the applicable warranty and available remedies, whether a breach occurred; and
- depending on the applicable warranty, available remedies, and whether a breach occurred, the appropriate measure of damages.

## II.     Counterclaim II (fraudulent omission)

Rollstock additionally argues that it is entitled to judgment as a matter of law on SupplyOne's Counterclaim II (fraudulent omission) because Missouri's economic loss doctrine prohibits parties from seeking recovery in tort for economic losses that are contractual in nature and because SupplyOne cannot prove the falsity element of fraudulent omission.

Under Missouri law, the economic loss doctrine prohibits "a party from seeking to recover in tort for economic losses that are contractual in nature." *Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010). "A number of Missouri decisions have held that recovery in tort for pure economic damages [is] only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence." *Id.* (citing cases).

"[T]he economic loss doctrine does not 'categorically' bar fraud and misrepresentation claims that arise in cases involving contractual relationships," however. *Superior Edge, Inc. v.*

---

[9] The Court finds the decrease in purchase price from that contemplated in Proposal 3 is adequately established in the evidence of record and the parties do not appear to dispute that it included a 10% discount from that price. As to Proposal 3's 30-day price guarantee and the Payment Terms' timing of required payments, the Court finds these provisions were conditions in favor of Rollstock, not SupplyOne, and as such, Rollstock could and did waive these conditions as the parties began performance. *See Morgan v. Sundance, Inc.*, 142 S.Ct 1708, 1713 (2022) (when ruling upon waiver of a beneficial term "courts focus on the actions of the party who held the right . . . and seldom considers the effects of those actions on the opposing party."); *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 851 (8th Cir. 2014).

*Monsanto Co.*, 44 F. Supp. 3d 890, 903 (D. Minn. 2014) (applying Missouri law). Rather, "most courts have allowed tort claims to go forward where they are based upon a misrepresentation that was outside of or collateral to the contract, such as many claims of fraudulent inducement." *Id.* (citation and quotation omitted). Two factors determine whether a representation is independent or collateral to the contract: (1) "whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract," and (2) "whether the plaintiff suffered additional damages outside the contract." *Id.* at 903-04.

Any relief under the fraudulent omission/inducement exception fails for SupplyOne because the Court finds a contract was formed as a matter of law. The fraudulent inducement exception to Missouri's economic loss doctrine applies as follows: "[I]n cases where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the economic loss doctrine bars the fraud claims because the fraud claims are substantially redundant with warranty claims." *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 909 (8th Cir. 2013) (internal quotation marks omitted). As in *Dannix*, at root, SupplyOne's fraudulent omission claim derives from its disappointed commercial expectations—i.e., that the machine it bought was not new as it had expected and would not perform as it was intended to perform. "That failure is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain." *Id.*

> [T]ort law is a superfluous and inapt tool for resolving purely commercial disputes. We have a body of law designed for such disputes. It is called contract law . . . . [C]ommercial disputes ought to be resolved according to the principles of commercial law rather than according to tort principles designed for accidents that cause personal injury or property damage. A disputant should not be permitted to opt out of commercial law by refusing to avail himself of the opportunities which that law gives him.

*Id.* at 909-10 (quoting *Schreiber Foods, Inc. v. Lei Wang*, 651 F.3d 678, 680-81 (7th Cir. 2011)). "'[S]ee[ing] no cause to judicially emasculate the warranty provisions of the UCC,'" the Court finds that Missouri's economic loss doctrine bars SupplyOne's fraudulent omission claim. *Id.* at 910 (quoting *Gibson v. Reliable Chevrolet, Inc.*, 608 S.W.2d 471, 475 (Mo. Ct. App. 1980)). Rollstock is therefore entitled to judgment as a matter of law as to SupplyOne's fraudulent omission counterclaim II.

### III. Counterclaim III (unjust enrichment)

Rollstock also argues that it is entitled to judgment as a matter of law on SupplyOne's Counterclaim III (unjust enrichment) because the existence of the parties' express written agreement precludes claims for equitable relief. In response, SupplyOne contends that it should be able to move forward on alternative theories of breach of contract and unjust enrichment. SupplyOne acknowledges that double recovery is not allowed, but it asserts that its choice among alternatively pleaded theories of recovery is not Rollstock's prerogative and that it is not required to make this choice at this point in the litigation.

"[U]njust enrichment . . . occurs 'where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust.'" *Am. Civil Liberties Union/E. Mo. Fund v. Miller*, 803 S.W.2d 592, 595 (Mo. banc 1991) (quoting *Erslon v. Vee-Jay Cement Contracting Co.*, 728 S.W.2d 711, 713 (Mo. Ct. App. 1987)). However, "Missouri law does not permit recovery in . . . unjust enrichment when the plaintiff's relationship with the defendant is governed by an existing contract." *32nd St. Surgery Ctr., LLC v. Right Choice Managed Care*, 820 F.3d 950, 957 (8th Cir. 2016) (citation and quotation omitted). In other words, "'[i]f the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract.'" *R & R Land Dev., L.L.C. v. Am. Freightways, Inc.*, 389 S.W.3d 234, 243 (Mo. Ct. App. 2012) (quoting *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)).

Here, as discussed above, the parties' contract – the existence of which the parties do not dispute – governs the parties' present dispute. SupplyOne's equitable claim seeks damages for Rollstock's failure to provide a properly working machine. The Court now makes clear that although the contractual terms are in dispute, there exists a contract between merchants. Thus, SupplyOne's equitable claim for the quasi-contract remedy of unjust enrichment is barred as a matter of law because an express contract exists for the very subject matter for which SupplyOne seeks recovery in asserting such equitable claim. Rollstock is therefore entitled to summary judgment as to Counterclaim III for unjust enrichment.

## Conclusion

Accordingly, and after careful consideration, Rollstock's motion for summary judgment (Doc. 57) is **GRANTED** as to SupplyOne's Counterclaims II and III (fraudulent omission and unjust enrichment) and is **DENIED** in all other respects.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 8, 2023